FILED
2011 Jun-21  PM 02:40
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| RONALD EUGENE RICHARDSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No.: 2:10-CV-2296-VEH |
| | ) |
| MICHAEL J. ASTRUE, COMMISSIONER, SOCIAL SECURITY ADMINISTRATION, | ) |
| | ) |
| Defendant. | ) |

_____

## MEMORANDUM OPINION

Plaintiff Ronald E. Richardson ("Mr. Richardson") brings this action pursuant to 42 U.S.C. § 405(g), § 205(g) of the Social Security Act. He seeks review of a final adverse decision of the Commissioner of the Social Security Administration ("Commissioner" or "Secretary"), which denied his application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").[1] Mr. Richardson timely pursued and exhausted his administrative remedies

_____

[1] In general, the legal standards applied are the same regardless of whether a claimant seeks DIB or SSI. However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations of statutes or regulations found in quoted court decisions.

available before the Commissioner.  The case is ripe for review pursuant to 42

U.S.C. § 405(g), § 205(g) of the Social Security Act.

## FACTUAL AND PROCEDURAL HISTORY

Mr. Richardson was a 53 year-old male at the time of his hearing before the

administrative law judge ("ALJ").  (Tr. 31, 158).  He obtained a GED and two

associate degrees.  (Tr. 44).  His past work experiences include employment as a

maintenance electrician, maintenance mechanic, and biomedical equipment

technician.  (Tr. 218).  Additionally, Mr. Richardson worked as a telemarketer

from April 2009 to August 2009.  (Tr. 39-40).  Mr. Richardson claims he became

disabled on May 1, 2008,[2] due to bipolar disorder (Tr. 329-34), anxiety disorder

with post traumatic stress disorder features (Tr. 408-10), chronic obstructive

pulmonary disease (Tr. 263-69), arthritis (Tr. 377), status post open pulmonary

reduction internal fixation of the distal fibula, status post bimalleolar fracture, and

fracture of the fourth and fifth metatarsal (Tr. 392-403).

Mr. Richardson filed his application for a period of disability and DIB on

April 25, 2007.  (Tr. 13).  He also filed a Title XVI application for SSI on April 25,

---

[2]  At the hearing before the ALJ, Mr. Richardson amended his alleged onset
date from December 11, 2006, to May 1, 2008.  (Tr. 13).

2007. *Id.* These claims were initially denied on August 2, 2007. *Id.* Mr. Richardson filed a timely written request for a hearing on August 17, 2007, and the hearing was held on February 1, 2010. *Id.* The ALJ concluded that Mr. Richardson was not disabled and denied his application on February 10, 2010. (Tr. 24). The Appeals Council denied Mr. Richardson's request for review, thus making the ALJ's decision the final decision of the Commissioner. (Tr. 1).

## STANDARD OF REVIEW

The function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales,* 402 U.S. 389, 390 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). This court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). This court will determine that the ALJ's opinion is supported by substantial evidence if it finds "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* Substantial evidence is "more than a scintilla, but less than a preponderance." *Id.*

## STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits and establish his entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[3]  The Regulations define "disabled" as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months."  20 C.F.R. § 404.1505(a).  To establish an entitlement to disability benefits, a claimant must provide evidence about a "physical or mental impairment" which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques."  20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled.  20 C.F.R. § 404.1520(a)(4)(i-v).  The Commissioner must determine in sequence:

(1)     whether the claimant is currently employed;
(2)     whether the claimant has a severe impairment;

---

[3]  The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499, as current through May 27, 2011.

(3)     whether the claimant's impairment meets or equals an impairment listed by the Secretary;

(4)     whether the claimant can perform her past work; and

(5)     whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to former applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel,* 189 F.3d 561 (7th Cir. 1999); *accord, Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004). "Once the claimant has satisfied steps one and two, she will automatically be found disabled if she suffers from a listed impairment.  If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the Secretary to show that the claimant can perform some other job."  *Pope*, 998 F.2d at 477; *accord*, *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995).  The Commissioner must further show that such work exists in the national economy in significant numbers.  *Phillips*, 357 F.3d at 1239.

## FINDINGS OF THE ADMINISTRATIVE LAW JUDGE

The ALJ found that Mr. Richardson has not engaged in substantial gainful activity since May 1, 2008, the amended alleged disability onset date.  (Tr. 15).  He also found that Mr. Richardson's status post open reduction internal fixation of the distal fibula, status post bimalleolar fracture, fracture of the fourth and fifth

metatarsal, bipolar disorder, and anxiety disorder constitute "severe" impairments based on the requirements in Regulations 20 C.F.R. § 404.1520(c).  (Tr. 15).  Additionally, the ALJ found that the medical evidence of record shows that Mr. Richardson has a history of drug and alcohol abuse, and that Mr. Richardson's alleged mental impairments are worsened by such drug and alcohol abuse. (Tr. 15-16).  The ALJ then noted that the medical evidence of record indicates that Mr. Richardson's drug and alcohol abuse is in remission, and these additional medically determinable impairments are non-severe because they have not been shown to cause significant persistent limitations of function.  (Tr. 16).  The ALJ held that the medically determinable impairments, in combination, do not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 of the Regulations.  (Tr. 17).

The ALJ concluded that Mr. Richardson's impairments prevent him from performing his past relevant work.  (Tr. 22).  The ALJ determined that Mr. Richardson retains a residual functional capacity ("RFC") to perform medium

work[4] except that Mr. Richardson can stand and walk six hours out of an eight hour day, and sit six hours out of an eight hour day. (Tr. 19). Additionally, the ALJ determined that Mr. Richardson can occasionally climb ladders, ropes, or scaffolds, and can frequently climb ramps and stairs, but must avoid unprotected heights. *Id.* The ALJ further determined that Mr. Richardson can understand, remember, and carry out simple, routine instructions, and his contact with the general public, co-workers and supervisors should be minimal.[5] The ALJ also found that Mr. Richardson has the ability to adapt to changes in the work environment. *Id.*

The ALJ then asked the vocational expert ("VE") whether jobs exist in the national economy for an individual with Mr. Richardson's age, education, work experience, and RFC. (Tr. 23). The VE testified that, given all these factors, the individual would be able to perform the requirements of representative occupations such as dietary aide (2,000 jobs in North Central Alabama), cleaner (6,000 jobs in North Central Alabama), and dishwasher (2,000 jobs in North Central Alabama).

---

[4] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. § 404.1567(c).

[5] "Minimal" is defined as being no more than two hours of intense contact per day. (Tr. 19).

*Id.*

Based on the testimony of the VE, the ALJ determined that Mr. Richardson is capable of making a successful adjustment to other work and concluded that Mr. Richardson has not been under a disability from May 1, 2008, through the date of the decision.  *Id.*

## ANALYSIS

This court is limited in its review of the Commissioner's decision in that the Commissioner's findings of fact must be reviewed with deference.  *See Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990) (citing *Graham v. Bowen*, 790 F.2d 1572, 1574-75 (11th Cir. 1986)).  In contrast to factual findings, however, the Commissioner's conclusions of law are subject to an "exacting examination" or *de novo* review.  *See id.* ("The Secretary's failure to apply the correct legal standards or to provide the reviewing court with sufficient basis for a determination that proper legal principles have been followed mandates reversal.") (citations omitted). In particular, this court has a "<u>responsibility to scrutinize the record in its entirety</u> to ascertain whether substantial evidence supports each essential administrative finding." *See Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (emphasis added).

8

Mr. Richardson asserts that the decision of the Commissioner is not supported by substantial evidence, and requests that the decision of the ALJ be reversed with the instruction to award benefits or remanded for further consideration.  (Doc. 9 at 2, 12).  More specifically, Mr. Richardson asserts that the ALJ erred by (1) affording more weight to the opinions of two non-examining psychological consultants than to the opinions of two examining psychological consultants (*id.* at 8), and (2) failing to consider the combined effects of Mr. Richardson's impairments (*id.* at 10).

I.   **THE ALJ GAVE APPROPRIATE WEIGHT TO THE MEDICAL OPINIONS IN THE RECORD.**

Mr. Richardson claims that the ALJ should have afforded more weight to the opinions of the one-time examining consultative psychologists, Dr. Tocci and Dr. Rogers, rather than the opinions of the non-examining State Agency psychologists, Dr. Eno and Dr. Hinton, who "merely checked boxes on a form . . . ." (*Id.* at 8).

A.   **The opinions of Dr. Tocci and Dr. Rogers, one-time examining psychological consultants, are inconsistent with the medical evidence of record.**

In determining that Mr. Richardson has the RFC to perform medium work with certain limitations, the ALJ stated that he afforded little weight to the opinions of Dr. Tocci and Dr. Rogers because their assessments were "inconsistent with the

9

great weight of the medical evidence of record." (Tr. 22).

While it is true that more weight is generally given to the opinion of an examining source, it is important to note that the existence of an examining relationship is only one of many factors considered in determining the weight to be given to a medical opinion. *See* 20 C.F.R. § 404.1527(d). Indeed, the ALJ is permitted to consider various factors when evaluating the weight to be accorded to a medical opinion, including: (1) the existence of an examining relationship, (2) the length, nature, and extent of any treatment relationship, (3) whether the opinion is amply supported, (4) the extent to which the opinion is consistent with the record as a whole, (5) whether the source is a specialist, and (6) the existence of other factors which tend to support or contradict the opinion. *Id.* It is well established that the ALJ may reject a medical opinion if the evidence supports a contrary finding. *Syrock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985). The Social Security regulations specifically direct the ALJ to consider the extent to which a medical opinion is consistent with the record; generally, the more consistent an opinion is with the record, the more weight that opinion should be given. 20 C.F.R. § 404.1527(d)(4). Furthermore, the opinion of a claimant's treating source[6]

---

[6] The Regulations provide that "[t]reating source means your own physician, psychologist, or other acceptable medical source who provides you, or has

is generally entitled to special weight because such a source is "able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s)." 20 C.F.R. § 404.1527(d)(2); *see Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).

The medical evidence of record reveals that Mr. Richardson's alleged psychological impairments were effectively controlled by medication so long as Mr. Richardson refrained from drug and alcohol use.[7]

The record shows that Mr. Richardson was first diagnosed with bipolar disorder in 1994 (Tr. 349). Mr. Richardson received psychological counseling and treatment services at Cahaba Center for Mental Health from March 2004 through July 2008. (Tr. 293-375). On March 22, 2004, Mr. Richardson's treating therapist, JoAnne Rowe, noted that Mr. Richardson was in a euthymic mood and

---

provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you." 20 C.F.R. § 404.1502. Further, a medical source is not considered a treating source "if your relationship with the source is not based on your medical need for treatment or evaluation, but solely on your need to obtain a report in support of your claim for disability." *Id.*

[7] Under the Social Security Act, "[a]n individual shall not be considered to be disabled . . . if alcoholism or drug addiction would . . . be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C § 423(d)(2)(C). However, the ALJ found that Mr. Richardson's drug and alcohol use were in remission, and he determined that such medically determinable impairments were "non-severe" because they did not cause "any significant persistent limitations of function." (Tr. 16).

that his appearance and affect were appropriate.  (Tr. 308).  The notes also show that Mr. Richardson was taking his medications, working full-time, and had a Global Assessment of Functioning ("GAF") score of 70.[8]  *Id.*  On June 22, 2004, the therapist noted that Mr. Richardson's mood was euthymic, he was taking his medications, and had a GAF score of 70. (Tr. 307).  On January 24, 2005, the therapist indicated that Mr. Richardson's mood was euthymic and that he had experienced some anxiety and insomnia due to one of his medications running out; however, Mr. Richardson's moods were helped as a result of taking more Xanax and refraining from drinking helped him "level out."  (Tr. 306).  The therapist assigned a GAF score of 70.  *Id.*  On May 16, 2005, the therapist noted that Mr. Richardson's mood was euthymic, but he had experienced a little anxiety due to the fact that he had lost a week's worth of Xanax and was forced to lower his own dosage.  (Tr. 305).  The therapist also listed one of Mr. Richardson's goals as being

---

[8] GAF scores between 70 and 61 indicate some mild symptoms or some difficulty in social, occupational, or school functioning.  GAF scores between 60 and 51 indicate moderate symptoms or moderate difficulty in social, occupational, or school functioning.  GAF scores between 50 and 41 indicate serious symptoms or any serious impairment in social, occupational, or school functioning.  GAF scores between 40 and 31 indicate some impairment in reality testing or communication or major impairment in several areas.  American Psychiatric Ass'n, *Diagnostic & Statistical Manual of Mental Disorders* 34 (4th Ed. Text Rev. 2000).

better compliance with prescriptions and assigned a GAF score of 70.  *Id.*  On November 7, 2005, the therapist observed that Mr. Richardson was "a little down and worried" because he had left his previous job of two years thinking he had a new job.  (Tr. 304).  The therapist found that Mr. Richardson was compliant with medications and assigned a GAF score of 65.  (Tr. 304).  In January 25, 2006, the therapist indicated that Mr. Richardson's mood had "stabilized on Lexapro and other meds" and noticed better compliance.  (Tr. 303).  She also documented that Mr. Richardson was "looking much better" and assigned a GAF score of 70.  *Id.* On July 11, 2006, the therapist  observed that Mr. Richardson was severely depressed following the death of his sister and mother and assigned a GAF score of 35.  (Tr. 302).  She also revealed that Mr. Richardson had not taken his medications in over two weeks, and she discussed medication and appointment compliance with him.  *Id.*  On August 15, 2006, Mr. Richardson reported to Dr. Baltz, a psychiatrist at Cahaba Center for Mental Health, that he is energetic for one or two weeks which leads him to "self-destructive behavior such as alcohol and drug use." (Tr. 295).  Dr. Baltz's notes from the visit also show that Mr. Richardson reported that depressed episodes were "fewer and further between" since he had been on medication.  *Id.*  As such, Dr. Baltz instructed Mr. Richardson

to continue taking his medications. (Tr. 298). On November 13, 2006, the therapist noted that Mr. Richardson had lost his job, had recently "decompensated" with the death of his sister and mother, but had recently started working again. (Tr. 301). The therapist also indicated that Mr. Richardson was only partially compliant with his medications and assigned a GAF score of 45. *Id.* The treatment records resume on April 17, 2007, and show that Mr. Richardson tested positive for marijuana and cocaine while participating in the residential treatment program at Cahaba Center for Mental Health. (Tr. 331-32). Mr. Richardson was referred to mandatory treatment as a result of the drug test but failed to comply, which resulted in his discharge. *Id.*

On May 11, 2007, Mr. Richardson received five days of inpatient treatment at Trinity Medical Center as a result of a suicide attempt.[9] (Tr. 340-44). The discharge summary indicates diagnoses of bipolar disorder, cocaine abuse, and generalized anxiety disorder, and Mr. Richardson was assigned a GAF score of 42. (Tr. 344).

---

[9] Mr. Richardson argues that the ALJ did not "fully understand that the drug overdose was accidental." (Doc. 9 at 8). However, it is clear that the ALJ did not treat the overdose as accidental, because in the discussion of whether Mr. Richardson met or equaled a listed impairment, the ALJ determined that the overdose was an episode of decompensation of extended duration. (Tr. 19).

14

In July 2007, Mr. Richardson resumed treatment at the Cahaba Center for Mental Health.  (Tr. 374).  The treatment records indicate that Mr. Richardson had been diagnosed with cyclothymia and cocaine dependence, and the therapist assigned a GAF score of 65.  *Id.*  In the treatment notes from August 20, 2007, Dr. Baltz noted that Mr. Richardson reported having not used cocaine for at least a month and marijuana for at least a month and a half.  (Tr. 373).  The notes also indicate that Mr. Richardson had tested positive for methamphetamine and had been fired from his previous job.  *Id.*  On July 21, 2008, Mr. Richardson was discharged from the Cahaba Center for Mental Health, due to lost contact, with diagnoses of cyclothymia and cocaine dependence and was assigned a GAF score of 45. (Tr. 375).

Dr. Tocci performed a consultative examination on July 18, 2007.  (Tr. 349-52).   Dr. Tocci's evaluation revealed the following objective findings: Mr. Richardson spoke without impediment; his affect was appropriate, normal, and stable; he was oriented to time, place, person, and situation; he demonstrated good attention and concentration; he demonstrated a good fund of information and comprehension; he demonstrated thought content appropriate to mood and circumstances and a logical thought organization; he demonstrated good insight to

15

his behavior; and he appeared to function within the average range of intelligence. (Tr. 349-51).  Dr. Tocci also noted that Mr. Richardson watches television, reads the Bible, goes to the library, and is able to perform activities of daily living without assistance; however, Mr. Richardson has difficulty completing such tasks when he is in a depressed phase.  (Tr. 351).  Dr. Tocci's diagnostic impressions included bipolar disorder and chronic poly-substance abuse.  *Id.*  Dr. Tocci assigned a GAF score of 55 for the current year.[10]  *Id.*  Based on her evaluation, Dr. Tocci concluded that Mr. Richardson would have "difficulty maintaining employment, relating to co-workers and supervisors, and concentrating over time." (Tr. 352).

Dr. Rogers performed a psychological evaluation of Mr. Richardson at the request of Mr. Richardson's attorneys on November 19, 2009.  (Tr. 404-12).  Dr. Rogers's evaluation revealed the following objective findings: Mr. Richardson's appearance was good; his characteristics of speech were normal; his affect was restricted; he was oriented to time, place, and person; he was able to perform the serial 7's subtraction task; he was able to discuss activities the day prior to and the

---

[10]  On July 19, 2007, the following day, Mr. Richardson's treating therapist at Cahaba Center for Mental Health assigned a higher GAF score of 65.  (Tr. 374).

day of the evaluation; his thought process was normal; and he reported "having heard things others could not hear . . . and felt that someone was out to get him . . . ." (Tr. 407).   Dr. Rogers's diagnostic impressions included bipolar disorder, anxiety disorder, alcohol abuse (in remission by self-report), and cocaine dependence (in remission by self-report).  (Tr. 410).  Dr. Rogers assigned a GAF score of 48.  *Id.*  Additionally, Dr. Rogers filled out a supplemental questionnaire in which he determined Mr. Richardson had "marked"[11] impairment in the following areas: degree of difficulty in maintaining social functioning, ability to respond to customary work pressure, ability to respond appropriately in a routine work setting, ability to respond appropriately to co-workers in a routine work setting, and ability to perform repetitive tasks in a routine work setting.  (Tr. 411-12).   Dr. Rogers also noted that Mr. Richardson had "moderate"[12] impairment in activities of daily living; concentration, persistence, or pace; understanding, carrying out, and remembering work instructions; and performing simple tasks in a work setting.  *Id.*  Dr. Rogers noted that these impairments would be expected to

---

[11]  The form defines "marked" as "an impairment which seriously affects ability to function." (Tr. 411).

[12]  The form defines "moderate" as "an impairment which affects but does not preclude ability to function." (Tr. 411).

last twelve months or longer and the severity of the impairments would apply without consideration of substance abuse.  (Tr. 412).

As a threshold matter, Dr. Tocci and Dr. Rogers are not considered treating sources because they only examined Mr. Richardson once and their relationship to Mr. Richardson was based "solely on [the] need to obtain a report in support of [his] claim for disability." 20 C.F.R. § 404.1502.  As such, their opinions are not automatically entitled to "substantial or considerable weight" as generally required for treating source opinions. *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986).

The assessments provided by Dr. Tocci and Dr. Rogers are inconsistent with Mr. Richardson's treatment records.  With regard to the Dr. Tocci's assessment, the treatment record does not support her ultimate conclusion that Mr. Richardson would have "difficulty maintaining employment, relating to co-workers and supervisors, and concentrating over time," because the treatment records clearly show that Mr. Richardson's condition stabilized so long as he remained compliant with medication dosage and refrained from drug or alcohol use. (Tr. 295, 302-08, 352).  Inconsistency is also evident from the GAF score of 55 assigned by Dr. Tocci (Tr. 351), because the treatment record shows that Mr. Richardson's

18

therapist at the Cahaba Center for Mental Health assigned a GAF score of 65 the following day (Tr. 374). The difference between these scores is significant because it represents a change from "moderate symptoms or moderate difficulty in social, occupational, or school functioning" to "some mild symptoms or some difficulty in social, occupational, or school functioning, but generally functioning pretty well . . . ." American Psychiatric Ass'n, *Diagnostic & Statistical Manual of Mental Disorders* 34 (4th Ed. Text Rev. 2000).

Turning to the assessment of Dr. Rogers, the treatment record does not support the conclusion that Mr. Richardson would have marked impairment in a routine work setting. (Tr. 411-12). This is especially true when considering the fact that Dr. Rogers believed such impairments would exist absent substance abuse. (Tr. 412). The treatment record shows that Mr. Richardson's condition remained stable so long as he took medication as prescribed and refrained from drug and alcohol abuse. (Tr. 295, 302-08).

The ALJ's decision to afford little weight to the opinions of one-time examining consultants, Dr. Tocci and Dr. Rogers, was supported by substantial evidence because these opinions were inconsistent with Mr. Richardson's medical record which consists of several years worth of extensive treatment records. *See*

19

*generally* 20 C.F.R. § 404.1527(d)(2) (indicating the importance of the treatment relationship in assigning weight to medical opinions).   Contrary to Mr. Richardson's argument, this was an appropriate exercise of the ALJ's discretion, and not an improper substitution of the ALJ's judgment for that of the two examining consultative psychologists.

Mr. Richardson also argues that the ALJ did not elaborate as to why the opinions of Dr. Tocci and Dr. Rogers were inconsistent with the medical evidence of record, and that this amounted to the ALJ arbitrarily rejecting uncontroverted medical evidence.   (Doc. 9 at 9).   This argument is without merit.   In assessing medical evidence, the ALJ is "required to state with particularity the weight he gave the different medical opinions and the reasons therefor." *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987); *see Walden*, 672 F.2d at 839 (stating an ALJ may not arbitrarily reject uncontroverted medical evidence).   Here, the ALJ specifically stated that he afforded little weight to the opinions of Dr. Tocci and Dr. Rogers because they were "inconsistent with the great weight of the medical evidence of record." (Tr. 22).   This explanation, coupled with the ALJ's discussion of Mr. Richardson's medical records as well as Dr. Tocci's and Dr. Rogers's opinions, elucidated the inconsistencies and adequately conveyed the reasons the

ALJ afforded little weight to those opinions.   Furthermore, contrary to Mr. Richardson's argument, the opinions of Dr. Tocci and Dr. Rogers are not uncontroverted medical evidence because they are inconsistent with and unsupported by Mr. Richardson's medical records.

> **B.     The ALJ was entitled to rely on the opinions of the two non-examining State Agency psychologists because they were consistent with the medical evidence of record.**

In determining that Mr. Richardson has the RFC to perform medium work with certain limitations, the ALJ afforded good weight to the opinions of the two non-examining Stage Agency psychologists, Dr. Eno and Dr. Hinton, because they were "consistent with the medical evidence of record." (Tr. 22).

It is well established that the "opinion of an examining physician is generally entitled to more weight than the opinion of a non-examining physician." *Broughton v. Heckler*, 776 F.2d 960, 962 (11th Cir. 1985) (quoting *Oldham v. Schweiker,* 660 F.2d 1078, 1084 (Former 5th Cir. Unit B Nov. 1981)).[13]  However, "[t]he law is clear that, although the opinion of an examining physician is generally

---

[13]  The Eleventh Circuit adopted as binding precedent all former Fifth Circuit decisions prior to October 1, 1981, and all former Fifth Circuit Unit B decisions after October 1, 1981.  *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc); *Stein v. Reynolds Sec., Inc.*, 667 F.2d 33, 34 (11th Cir. 1982).

entitled to more weight than the opinion of a non-examining physician, the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion." *Oldham*, 660 F.2d at 1084. Furthermore, Social Security Ruling 96-6P provides that "[i]n appropriate circumstances, opinions from State agency medical and psychological consultants . . . may be entitled to greater weight than the opinions of treating or examining sources." SSR 96-6P, 1996 SSR LEXIS 3 (July 2, 1996). Inconsistency with the record constitutes such an appropriate circumstance. 20 C.F.R. § 404.1527(d)(4); *see Oldham*, 660 F.2d at 1084.

As discussed above, the opinions of the examining psychological consultants, Dr. Tocci and Dr. Rogers, are inconsistent with Mr. Richardson's medical records. Once the ALJ identified such inconsistency, he afforded good weight to the opinions of Dr. Eno and Dr. Hinton because they were consistent with Mr. Richardson's medical records. The medical evidence of record supports the finding that Mr. Richardson suffers from bipolar and anxiety disorders, but these mental impairments are not sufficiently severe to prevent Mr. Richardson from performing a limited range of medium work, consistent with Dr. Eno's and Dr. Hinton's opinions.

## II.   THE ALJ CONSIDERED THE COMBINED EFFECTS OF MR. RICHARDSON'S IMPAIRMENTS.

Mr. Richardson argues that the ALJ failed to consider the combined effects of his impairments when determining his disability status.  (Doc. 9 at 11).  The ALJ "must consider the combined effects of a claimant's impairments in determining whether she is disabled." *Walker v. Bowen*, 826 F.2d 996, 1001 (11th Cir. 1987).  Furthermore, where a "claimant has alleged a multitude of impairments, a claim . . . may lie even though none of the impairments, considered individually, is disabling." *Hudson v. Heckler*, 755 F.2d 781, 785 (11th Cir. 1985) (quoting *Bowen v. Heckler,* 748 F.2d 629, 635 (11th Cir. 1984)).

In the Notice of Decision, the ALJ noted his obligation to consider Mr. Richardson's combination of impairments.  (Tr. 14).  After concluding that Mr. Richardson does not have an impairment or combination of impairments that meets or medically equals a listed impairment, he determined that Mr. Richardson has the RFC to perform a limited range of medium work, notwithstanding his impairment or combination of impairments.  (Tr. 17-22).  In making this finding, the ALJ specifically discussed all relevant evidence relating to Mr. Richardson's impairments including objective medical evidence; medical history; treatment notes; opinion evidence; and Mr. Richardson's subjective complaints relating to bipolar disorder, anxiety disorder, cyclothymia, and physical injuries to the ankle,

hip, and knee.   (Tr. 20, 21-22).   With regard to Mr. Richardson's subjective complaints, the ALJ found that the statements concerning the intensity, persistence, and limiting effects of the symptoms were not credible to the extent they are inconsistent with the RFC finding based on the medical and opinion evidence in the record.  (Tr. 20-21).  In the immediate case, the ALJ specifically stated that the negative credibility finding was based on the fact that Mr. Richardson's subjective complaints were inconsistent with the substantial medical and opinion evidence in the record that was used to formulate the RFC.  (Tr. 21).  *Foote*, 67 F.3d at 1562 ("A clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court.").

The conclusion that the ALJ properly considered the combined effects of Mr. Richardson's impairments is also evident from the testimony of the VE at the hearing.  "In order for a VE's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." *Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir. 1999).   At the hearing, the ALJ posed a hypothetical to the VE that accurately reflected Mr. Richardson's age, education, work experience, and physical and mental impairments.  (Tr. 56-57).   Thus, the ALJ's conclusion based on the VE's

24

testimony was supported by substantial evidence.

## CONCLUSION

Based upon the court's evaluation of the evidence in the record and the submissions of the parties, the court finds that the Commissioner's final decision is supported by substantial evidence and applies the proper legal standards. Accordingly, the decision of the Commissioner will be affirmed by separate order.

**DONE** and **ORDERED** this the 21st day of June, 2011.

**VIRGINIA EMERSON HOPKINS**
United States District Judge